## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHAWN D. SMITH,

     Plaintiff,

     v.                                                     Case No. 14-3220-JAR-JPO

CHRISTOPHER TRAPP, ET AL.,

     Defendants.

## MEMORANDUM AND ORDER

Plaintiff Shawn D. Smith is a Kansas prisoner proceeding *pro se*, currently held at the Jackson County, Kansas Jail. The remaining claims alleged in his Amended Complaint are brought under 42 U.S.C. § 1983 against Christopher Trapp and Tamera Eggleston, employees at the Lansing Correctional Facility ("LCF") in Lansing, Kansas, arising out of their conduct while Plaintiff was still an inmate housed at that facility. Before the Court are Defendant Christopher Trapp's Motion to Dismiss Plaintiff's First Amended Complaint, or, in the Alternative, for Summary Judgment (Doc. 75), and Defendant Tamera Eggleston's Motion to Set Aside Clerk's Entry of Default (Doc. 115). These motions are fully briefed,[1] and the Court is prepared to rule. As described more fully below, Defendants' motions are granted. The Court construes Defendant Trapp's motion as a motion for summary judgment, and finds that it should be granted on the basis of qualified immunity. The Court also grants Eggleston's motion to set aside default, and directs her to file an Answer within fourteen (14) days of this Order.

---

[1] Defendant Trapp opted not to file a reply brief in support of his dispositive motion.

## I.    Motion to Dismiss, or in the Alternative, for Summary Judgment

Trapp moves to dismiss, or in the alternative, for summary judgment, on the three § 1983 claims asserted against him in the First Amended Complaint, all in his individual capacity: (1) Count 1 based on a Fourth Amendment violation for unlawful search and seizure; (2) Count 2, based on an Eighth Amendment violation for cruel and unusual punishment; and (3) Count 3, based on a First Amendment violation for retaliating against Plaintiff for reporting earlier Fourth and Eighth Amendment violations.  In arguing the motion, Trapp relies on facts contained in the *Martinez* report.[2]  If the Court on a motion to dismiss under Rule 12(b)(6) looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[3]  This includes documents attached to a *Martinez* report.[4]  The *Martinez* report may not be used at the motion to dismiss stage to refute facts pled by the Plaintiff, or to resolve factual disputes.[5]  Therefore, the Court considers Defendant's alternative motion for summary judgment.

### A.    Standards

Defendant moves for summary judgment under the doctrine of qualified immunity. Qualified immunity may apply as a defense to Plaintiff's individual-capacity claims against Trapp.[6]  Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.[7]  As the Tenth Circuit explained in *Rojas v.*

---

[2]Doc. 23.

[3]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[4]*See, e.g., Ketchum v. Cruz*, 961 F.2d 916, 919 (10th Cir. 1992).

[5]*See McAdams v. Wyo. Dep't of Corr.*, 561 F. Appx 718, 720 (10th Cir. 2014) (collecting cases).

[6]*See, e.g., Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013).

[7]*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

*Anderson*,[8] "because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the defense triggers a modified summary judgment standard.[9]  The initial burden rests on the plaintiff, rather than the defendant; and the plaintiff must first "clear two hurdles:" (1) demonstrate that the defendant violated his constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[10]

In determining whether the plaintiff has demonstrated a violation of his constitutional rights and that the right was clearly established at the time, the court must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[11]  In *Scott v. Harris*, the Supreme Court held that "[T]his usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[12]  Moreover, citing to the *Scott* decision, the Tenth Circuit has held that "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record."[13]  In that sense, the Court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts and reasonable inferences therefrom in the light most favorable to Plaintiff.

---

[8]727 F.3d 1000, 1003 (10th Cir. 2013).

[9]*Id.*

[10]*Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*,  555 U.S. 223, 231–32 (2009)).

[11]*Scott v. Harris*, 550 U.S. 372, 376–80 (2007).

[12]*Id.*

[13]*Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009).

**B.**     **Uncontroverted Facts**

The following facts are taken from Plaintiff's Complaint and the *Martinez* report, and are either uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.[14]

In 2012, Plaintiff Shawn Smith was an inmate in the custody of the Kansas Department of Corrections ("KDOC") housed at LCF, and Trapp was employed by KDOC as a corrections officer at LCF.  On August 16, 2012, Trapp received information from another correctional officer that Plaintiff was in possession of a cell phone which "was supposed to be in a box resembling that of a jewelry box[.]"[15]

That evening, Trapp and Officer Danny Duft conducted the 8:30 p.m. security count, counting last Plaintiff and his cellmate, Humberto Martinez.[16]  Trapp planned to conduct the search with Officer Hutchinson present, but after the count, Hutchinson noticed an inmate enter a porter closet that he determined must be searched.  In the meantime, believing Hutchinson was behind him, Trapp ordered Plaintiff to remove his clothing for a strip search, and Duft left to return to the office to call the count in.  During the strip search, Plaintiff covered his genitals with his hands, and Trapp ordered him not to do so.  Plaintiff then asked Trapp why he wanted to view his genitals, and Trapp responded, "[B]ecause I can" and "then licked his lips, smiled[,] and

---

[14]As a *pro se* litigant, Plaintiff's pleadings are entitled to a liberal construction.  *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).  This means that "if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Barnet v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  At the same time, the Court may not assume the role of advocate for a *pro se* litigant.  *Id.*

[15]Doc. 23, Ex. B at 5-6.  Plaintiff purports to controvert this fact by stating that there is no evidence to confirm that Trapp in fact received this tip.  But the disciplinary reports and subsequent investigation contain several reports by Trapp and other officers that he received such a tip.  Whether the tip was correct or not is immaterial to the issues presented on summary judgment.

[16]Plaintiff originally named Duft as a defendant, but he has been dismissed for failure to timely serve.  Doc. 104.

grabbed his [own] crotch."[17]  Trapp never touched Plaintiff.  No persons were present during the search other than Trapp, Plaintiff, and Martinez.  Trapp strip-searched Martinez after completing Plaintiff's strip search.  Hutchinson rejoined Trapp and assisted in the search of Plaintiff and Martinez's cell.  The officers did not find a cell phone.

The next morning, Plaintiff dialed the prison's sexual assault hotline to report that Trapp had conducted a strip search with a prurient interest and wanted to press charges for "sexual assault[.]"  James Collins, the Prison Rape Elimination Act ("PREA")[18]  representative at LCF, and Special Agent David Haehl investigated Plaintiff's report, which included interviewing Trapp.  Trapp denied any prurient interest or that he had conducted the search to satisfy any sexual desire on his part.  Haehl concluded that although Lt. Garnett, Trapp's supervisor, did not recall giving authorization to Trapp to perform the strip search of Plaintiff and Martinez on August 16, his normal practice was to do so when an officer is looking for contraband.  Haehl found that Trapp violated two prison regulations by not having a second officer present during the strip searches, and by allowing Martinez to be present during Plaintiff's strip search.  Nonetheless, Haehl determined that Plaintiff's allegation that Trapp conducted the strip search for the purpose of sexual gratification "cannot be substantiated.  Staff testimony and statements indicate these searches were conducted in a reasonable belief that Smith and Martinez were in possession of contraband, specifically, a cell phone."[19]

On August 30, 2012, there was a second search of Plaintiff's cell.  Another inmate told Plaintiff that Trapp entered his cell before the search officers came in to search the pod.  At some

---

[17]Doc. 31 at 6.

[18]*See* 42 U.S.C. §§ 15601–15609.  Collins was named as a co-defendant in this matter.  The Court previously dismissed the claims against him for failure to state a plausible claim for which relief may be granted. Doc. 59.

[19]Doc. 23, Ex. B at 4.

point, Trapp joined the search team, and found a jewelry box with a secret compartment. Inside the compartment, Trapp found a black and grey Samsung flip phone. Plaintiff was issued a disciplinary report, charging him with Internal Management Policy and Procedure ("IMPP") violations for possessing the cell phone found in his cell.

At his disciplinary hearing, Plaintiff admitted he was the maker and sole owner of the jewelry box but denied that the open space was a secret compartment and denied any knowledge of how the cell phone came to be in it. When asked about the hidden compartment, Plaintiff explained the compartment's purpose was "less weight" and that it "was a little heavy for a jewelry box" so he "took out the weight that was unnecessary to have" even though it "weighed less than a pound to begin with."[20] The hearing officer noted the cell phone fit "tight, there was no movement" in the compartment and concluded that the box "was specifically designed to house the phone and conceal it."[21] As a result, the hearing officer found it was more likely than not that plaintiff was in possession of the cell phone in violation of K.A.R. §§ 44-12-1001 and 44-12-211b, and sanctioned Plaintiff with a 30-day loss of good time credits.

Plaintiff then filed a Petition for Writ of Habeas Corpus in the District Court of Leavenworth County, Kansas, alleging due process violations surrounding his disciplinary proceedings, including inadequate notice, denial of documentary evidence, and lack of an impartial hearing officer. A second disciplinary hearing was held on June 21, 2013, while this case was pending, with Plaintiff in abstentia after he refused to enter a plea. The disciplinary report was read into the record, and Plaintiff was again found guilty of violating K.A.R. 44-12-211b and given sanctions of 30 days disciplinary segregation suspended for 180 days, and 30 days of privilege restrictions. But on July 2, 2013, the disciplinary conviction was "dismissed"

---

[20]Doc. 23, Ex. C at 16.

[21]*Id.* at 11, 16–17.

and all sanctions were withdrawn.  The disciplinary record contains a note that the case was dismissed because of "continued violations in second hearing."[22]  The Secretary of Corrections then moved to dismiss the habeas case because the same relief Plaintiff sought in his petition had been granted by the KDOC.  The state court granted the Secretary's motion because the case was moot.

### C.    Discussion

### 1.    Fourth Amendment

Count 1 alleges that Trapp violated Plaintiff's Fourth Amendment rights when he strip-searched Plaintiff in front of Martinez for the purpose of sexual gratification.  Trapp argues that Plaintiff cannot meet his burden of demonstrating that the strip search in this case violated the Fourth Amendment, or that the right to be free from a strip search on these facts was clearly established.   Under the Fourth Amendment, the Court must balance "the need for the particular search against the invasion of personal rights that the search entails."[23]  In evaluating this balancing test, the Court should consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."[24]  The Supreme Court "has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'"[25]  The Supreme Court has also held that

---

[22]Doc. 23, Ex. C at 78.

[23]*Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

[24]*Id.* (quoting *Bell*, 441 U.S. at 559).

[25]*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

correctional officials should be allowed "to devise reasonable search policies to detect and deter the possession of contraband in their facilities."[26]

It is true that "a strip search is an invasion of personal rights of the first magnitude."[27] While Trapp's comments to Plaintiff during the strip search were inappropriate and humiliating, he did not physically touch Plaintiff at any time during the search. Nor does the place of the strip search raise a constitutional problem. The search took place in Plaintiff's jail cell, with only Trapp and Plaintiff's cellmate present. It was otherwise private. Martinez briefly saw Plaintiff's naked body before turning away. The Tenth Circuit has stated that the Constitution does not require "complete privacy" for a strip search.[28] But it has criticized public strip searches in front of "several (or perhaps many) others," and requires a justification specific to the group nature of such searches.[29] Plaintiff's strip search occurred in a jail cell before one correctional officer and one cellmate, whose back was turned for the majority of the search. This was not the type of group strip search that requires a justification specific to the group nature of the search.[30]

The Court turns to Trapp's justification for the strip search—to uncover contraband based on a tip provided to Trapp by another correctional officer. To justify the strip search of an inmate, there must be a reasonable relation to a legitimate penological interest.[31] Trapp claims that he received a tip that Plaintiff possessed a contraband cell phone from Corrections Specialist John Speer of the evening shift security team. Several other staffmembers recalled Trapp telling

---

[26]*Id.* at 328 (citing *Bell*, 441 U.S. at 546).

[27]*Archuleta*, 523 F.3d at 1283 (quoting *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993)).

[28]*Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir. 1973).

[29]*Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002); *see Shapiro v. Rynek*, 212 F. Supp. 3d 990, 996–97 (D. Colo. 2016) (discussing justifications required when evaluating group strip searches)

[30]*See Shapiro*, 212 F. Supp. 3d at 996 (requiring justification for group search conducted in a public area where all inmates could see one another).

[31]*See Farmer*, 288 F.3d at 1260.

them he received the tip.  These facts are supported by the *Martinez* report.  Although a separate affidavit from Spear would have provided further evidence that Trapp received this tip, it was not required in light of the other officers' statements in the report.

A cell phone is considered dangerous contraband because it can be used to coordinate escape, or to promote other criminal activity inside the detention center.[32]  Garnett stated during the PREA investigation that he routinely approved this type of search when a correctional officer had reason to believe an inmate was in possession of contraband.  When considering issues concerning institutional security, the Court defers to prison officials unless there is substantial evidence that they exaggerated their response.[33]  The Court therefore determines that the strip search was reasonably related to the prison's legitimate penological interest in locating prisoner contraband.  Moreover, Plaintiff has not pointed to substantial evidence that Trapp exaggerated his response to the tip that Plaintiff possessed a cell phone.[34]  Plaintiff challenges the factual basis for the tip, but whether Plaintiff in fact possessed a cell phone is immaterial to the Court's inquiry, which only requires that the strip search be reasonably related to a legitimate penological interest.

Plaintiff questions Trapp's credibility and suggests that he fabricated the tip.  But there is no evidence that Trapp did not receive the tip from Spears other than Plaintiff's own conclusory allegation.  Likewise, the only evidence suggesting that Trapp was motivated by sexual gratification to conduct the strip search, is Plaintiff's conclusory assertion.  The Court does not weigh credibility on summary judgment.  Moreover, it is Plaintiff's burden on summary

---

[32]*See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 332 (2012) (explaining that everyday items such as cell phones can undermine security in a detention facility); *Grissom v. Werholtz*, No. 07-3302-SAC, 2012 WL 3732895, at *11 (D. Kan. Aug. 28, 2012) (explaining security risks of cell phones).

[33]*See Florence*, 566 U.S. at 328.

[34]Indeed, Plaintiff "agrees, cellphones in particular, are 'one of the most concerning devices an inmate can possess.'"  Pl. Response Br., Doc. 110 at 8 (quoting *Grissom*, 2012 WL 3732895, at *11).

judgment when the defendant invokes qualified immunity to demonstrate a constitutional violation.  While it is true that the Court must view the facts in the light most favorable to Plaintiff, it does follow that the Court must consider conclusory statements to controvert the *Martinez* report.[35]  Here, the only evidence in the record about the tip is Trapp's statement that he received the tip from Officer Spear, which prompted his decision to search Plaintiff's cell and perform a strip search of both inmates in the cell.  Statements by Hutchinson and Duft during the investigation that occurred two weeks after the search corroborate Trapp's contention—he told these officers at the time that he received the cell phone tip prompting the search.  In the face of this uncontroverted evidence, Plaintiff cannot demonstrate that Trapp lacked a reasonable suspicion that Plaintiff was in possession of a contraband cell phone.

Plaintiff points to the IMPP violations identified during the PREA investigation—Trapp searched Plaintiff without an additional staffmember witness, and in front of his cellmate—as proof that there was no reasonable penological interest for the strip search.  But Trapp's IMPP violations do not dictate a finding that the strip search was not reasonably related to a legitimate penological interest.  The Court has considered the factors from *Bell v. Wolfish*[36] that dictate the constitutional inquiry here and finds no genuine issue of material fact that the penological interest in deterring and finding illegal contraband upon reasonable suspicion justified the invasion of Plaintiff's personal right to be free from this search.

Additionally, the Court finds that it was not clearly established at the time of the strip search that an inmate has a clearly established right under the Fourth Amendment to be free from

---

[35]*See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitle them to the presumption of truth."); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (explaining that where the plaintiff fails to controvert the allegations in the *Martinez* report, his conclusory allegations do not create a genuine issue of material fact).

[36]441 U.S. 520, 559 (1979).

a strip search in his cell, with his cellmate present, when a correctional officer receives a tip that the inmate possess a contraband cell phone.[37]

### 2. Eighth Amendment

Next, Trapp argues that the strip search in combination with Trapp's verbally abusive comments violated his Eighth Amendment right to be free from excessive force. A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm," and a subjective component requiring that the defendant acted with the culpable state of mind referred to as "deliberate indifference."[38] Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety."[39] Deliberate indifference requires "a higher degree of fault than negligence."[40] The Tenth Circuit has explained that "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards," and that "includes the right to be free from sexual abuse."[41] However, "verbal harassment alone [is] not sufficient to state a claim under the Eighth Amendment," unless it is combined with a physical assault.[42]

---

[37]*See, e.g.*, *Myers v. James*, 344 F. App'x 457, 459 (10th Cir. 2009) (describing clearly established law in this Circuit that "a detainee who is not placed in the general prison population cannot be strip searched if the searching officer does not at least have reasonable suspicion that the detainee possesses concealed weapons, drugs, or contraband." (quoting *Foote v. Spiegel*, 118 F. 3d 1416, 1424 (10th Cir. 1997)); *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (discussing inmate right to be free from public strip search without satisfactorily showing that there was a legitimate penological reason for strip searching in that manner).

[38]*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

[39]*Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[40]*Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (citations omitted); *Farmer*, 511 U.S. at 835.

[41]*Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

[42]*Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998).

It is uncontroverted that Trapp never touched Plaintiff. The alleged sexual harassment was entirely verbal. Therefore, as a matter of law, Plaintiff cannot demonstrate the objective component of an Eighth Amendment excessive force claim. Plaintiff argues that the verbal harassment is actionable because it occurred during a strip search, but he cites no authority for this proposition nor can the Court locate any. Instead, the weight of authority in this Circuit is that even outrageous verbal conduct and *de minimis* touching is not objectively serious enough to violate the Eighth Amendment.[43] Plaintiff also argues that the psychological abuse he suffered is sufficient to demonstrate an Eighth Amendment violation. But again, he cites no authority for the proposition that psychological or emotional abuse, standing alone, are objectively serious enough to rise to the level of an Eighth Amendment violation. And even assuming Plaintiff could show that Trapp's conduct was objectively serious enough to constitute an Eighth Amendment violation, it was not clearly established in this Circuit at the time that verbal abuse during a strip search that involved no physical contact constitutes an Eighth Amendment violation. Thus, summary judgment is granted in favor of Trapp on the Eighth Amendment claim.

### 3.    First Amendment

Plaintiff claims that the August 30, 2012 search of his cell and disciplinary report were done in retaliation for his filing a PREA complaint against Trapp on August 17, 2012. To establish his First Amendment retaliation claim, Plaintiff must show that (1) he engaged in

---

[43]*Id.* (finding "severe verbal sexual harassment and intimidation" standing alone insufficient to state a claim); *see also Adkins v. Rodriguez*, 59 F.3d 1034, 1036–37 (10th Cir. 1995) ("While she has described outrageous and unacceptable conduct by a jailer, we must find the connection between those acts and the constitutional right violated. "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action. . . . The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (quoting *Hudson v. McMillian*, 503 U.S. 1, 1 (1992)); *Joseph v. U.S. Fed. Bureau of Prisons*, No. 00-1208, 2000 WL 1532783, at *1–2 (10th Cir. Oct. 16, 2000) (finding sexual harassment was not objectively serious where it involved female prison employee touching him in a suggestive manner and exposing her breast to him).

constitutionally-protected conduct; (2) that Trapp caused him an injury which would chill a person of ordinary firmness from continuing that conduct; and (3) Trapp was substantially motivated by that conduct.[44]  "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective . . . a trivial or *de minimis* injury will not support a retaliatory prosecution claim."[45]

Plaintiff can demonstrate the first element of the test based on his PREA complaint about Trapp's alleged sexual harassment.[46]  As to the second element, Trapp argues that an inmate cannot as a matter of law base a retaliation claim on a prison rule infraction if the inmate was ultimately found to have committed the underlying charge and he was provided with due process.[47]  Trapp contends that Plaintiff's claim is that he was convicted of false disciplinary charges, and that if the Court finds in favor of Plaintiff on this claim, "it would necessarily imply the invalidity of his disciplinary convictions."[48]  But Trapp does not address, or even acknowledge, that the disciplinary action was ultimately dismissed and all sanctions withdrawn. The notes from that decision indicate that the charges were dismissed due to "continued violations in second hearing."[49]  Neither Trapp nor the *Martinez* report explain what this note means.  But Defendants previously used this dismissal as a sword to (1) render moot Plaintiff's habeas corpus petition in Leavenworth County Court; and (2) move for dismissal of Plaintiff's due process claims against co-Defendant Shanks, who was the hearing officer.  Therefore, the

---

[44] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

[45] *Id.* (quoting *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004)).

[46] *See, e.g.*, *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

[47] *See, e.g.*, *Pinson v. Berkebile*, 576 F. App'x 710, 713 (10th Cir. 2014).

[48] Doc. 76 at 19.

[49] Doc. 23, Ex. C at 78.

Court cannot find as a matter of law that Plaintiff's disciplinary conviction, which was ultimately dismissed, could not form the basis of his retaliation claim.

The third element requires that Plaintiff demonstrate a causal connection between his PREA complaint and the disciplinary action that resulted from Trapp finding the cell phone in Plaintiff's jail cell on August 30, 2012. Although a prison may not retaliate against an inmate for protected conduct, "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity."[50] "Thus, a prisoner alleging retaliation must prove that but for the retaliatory motive, the incidents he claims were retaliatory, including disciplinary action, would not have taken place."[51]

Plaintiff notes the temporal proximity of the search three days after he filed his PREA complaint on the morning of August 17, 2012. But temporal proximity standing alone is insufficient to establish causation because the prisoner must not only show that a retaliatory motive may have played a part in the challenged action, but that it was the but-for cause.[52] Before Plaintiff filed his PREA complaint, Trapp had information that Plaintiff was in possession of a cell phone that may be in a box resembling a jewelry box. As already described, Trapp did not find the cell phone during the August 16 search, so there was reason to believe that the cell phone was still at large. During the August 30 search, Trapp discovered a cell phone in a hidden compartment of Plaintiff's handmade jewelry box, which appeared to be designed specifically to hold the phone. Plaintiff admitted that he made the jewelry box, and that it belonged to him. Because Trapp was already on the lookout for a cell phone before Plaintiff filed his PREA

---

[50]*Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

[51]*Pfeil v. Lampert*, 11 F. Supp. 3d 1099, 1117 (D. Wyo. 2014) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990)), *aff'd*, 603 F. App'x 665 (10th Cir. 2015).

[52]*See, e.g.*, *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010).

complaint—before Trapp could have developed a retaliatory motive—the temporal proximity between the filing of the PREA complaint and the discovery of the cell phone lacks probative value and, standing alone, is insufficient to satisfy the "but-for" causation requirement to demonstrate retaliation. Plaintiff simply cannot show that but-for Trapp's retaliatory motive, the disciplinary action against him for possessing a contraband cell phone would not have taken place. Plaintiff produced an affidavit from a fellow inmate who states that he saw Trapp enter Plaintiff's cell before the search, however, he did not attest to seeing Trapp take a cell phone into the cell. Thus, Plaintiff's assertion that Trapp planted the cell phone to fabricate his disciplinary report is purely conclusory. Because Plaintiff's Amended Complaint fails to allege specific, objective facts from which it could plausibly be inferred that Trapp's conduct was retaliatory, the Court grants Trapp's motion for summary judgment on this claim.

## III.    Motion to Set Aside Entry of Default

Fed. R. Civ. P. 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk **must** enter the party's default."[53] The Amended Complaint naming Defendant Tamera Eggleston for the first time in this action was filed on May 16, 2016.[54] Summons was first issued to Eggleston on June 29, 2016, after the Court obtained her last known address from the KDOC. It was returned unexecuted on July 18, 2016.[55] In the meantime, several of the other co-defendants moved to dismiss, and the case proceeded without action by or against Eggleston.

---

[53]Fed. R. Civ. P. 55(a) (emphasis added).

[54]Doc. 31.

[55]Doc. 46. All that is required of the KDOC, the Marshals, and the Court is to locate the Defendant at the last known address. *See, e.g., Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) ("the Marshal is not charged with finding a defendant who has moved without providing an accessible forwarding address").

Out of an abundance of caution, Magistrate Judge Waxse issued an Order to Show Cause on September 11, 2017, why Eggleston should not be dismissed from this case for failure to serve within the time required under Fed. R. Civ. P. 4(m), and issued an alias summons to Eggleston at the same address where she was first served in 2016. This time, service was returned executed on September 25, 2017. Seeing no Answer filed within twenty-one days of service,[56] the Court issued an Order to Show Cause to Plaintiff, why his claims against Eggleston should not be dismissed without prejudice for lack of prosecution under Rule 41(b). In response, Plaintiff applied for a clerk's entry of default. On December 15, 2017, the Clerk of Court entered default against Eggleston under Fed. R. Civ. P. 55(a).[57]

On January 2, 2018, Dennis Depew of the Kansas Office of Attorney General entered an appearance on behalf of Eggleston, and moved to set aside the clerk's entry of default and answer out of time. Under Rule 55(c), the Court may set aside a clerk's entry of default if good cause is shown. When making this determination, the Court must consider "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented."[58] The Court need not consider all of these factors, but is mindful that "willful failure alone may constitute sufficient cause for the court to deny the motion."[59] The standard is "fairly liberal because '[t]he preferred disposition of any case is upon its merits and not by default judgment.'"[60]

---

[56]Fed. R. Civ. P. 12(a).

[57]Doc. 111. The Kansas Attorney General's Office received notice of all of these filings.

[58]*See, e.g., Guttman v. Silverberg*, 167 F. App'x 1, 3 (10th Cir. 2005).

[59]*Id.*

[60]*Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (quoting *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970)).

These factors weigh in favor of setting aside the entry of default. While the Court is troubled by the delay on the part of the KDOC and Kansas Attorney General's Office in tracking Eggleston's service, it is clear that the default was not willful. At best, it was negligent. After receiving service over one year after the Amended Complaint was filed, Eggleston quickly sought representation by sending a request to the Kansas Department of Corrections—that request was received two days after service was executed. The employee tasked with processing these requests passed away unexpectedly five days before Eggleston sent in her request; it was thus inadvertently ignored for a period of time before it was forwarded to the Attorney General's Office, which prompted the default.

Also, there has been no showing of prejudice to Plaintiff. No discovery has ensued because the case has been stayed pending this Court's ruling on claims of qualified immunity by the other defendants.[61] Given the Court's rulings dismissing all other defendants in this case, Plaintiff should be on fair notice of the defenses upon which Eggleston will rely. Also, given the Court's dispositive rulings, it is evident that Eggleston will have a meritorious defense on the basis of qualified immunity. As such, the liberal standard that applies to motions to set aside default dictates that Eggleston should be allowed to plead her defense on the merits, and the Court therefore grants her motion to set aside the clerk's entry of default.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Christopher Trapp's Motion to Dismiss Plaintiff's First Amended Complaint, or, in the Alternative, for Summary Judgment (Doc. 75) is granted in part and denied in part. The motion to dismiss is **denied**; the motion for summary judgment is **granted**;

---

[61]Doc. 85.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Tamera Eggleston's Motion to Set Aside Clerk's Entry of Default (Doc. 115) is **granted**.  She shall file her Answer within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

Dated: January 29, 2018

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE